# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **JASPER PERDUE,** | ) |
| Plaintiff, | ) Case No. 7:21CV00239 |
| v. | ) **OPINION** |
| **CMC FISHER, ET AL.,** | ) JUDGE JAMES P. JONES |
| Defendants. | ) |

*Jasper Perdue, Pro Se Plaintiff; Justin M. Lugar, Assistant United States Attorney, U.S. ATTORNEY'S OFFICE, Roanoke, Virginia, for Defendants.*

The plaintiff, Jasper Perdue, a federal inmate proceeding pro se, filed this civil rights action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Liberally construing his allegations, he sues federal prison officials for allegedly using excessive force against him, in violation of his constitutional rights. After review of the record, I conclude that the defendants are entitled to summary judgment on the ground that Perdue failed to exhaust his administrative remedies.

I. BACKGROUND.

In the Amended Complaint,[1] Perdue alleges the following events that occurred while he was confined at the United States Penitentiary in Lee County, Virginia ("USP Lee"). One day in the summer of 2019,[2] Lieutenant Bowls told other officers

> to put [Perdue] in the so called 'Roll Treatment' position, instructing [officers] to turn [his] hands (palms) faced away from [his] body and double cuffed both wrists in 'four points' cuffs looped through the hooks on the bed to limit blood circulation and so that [his] wrists are force[d] to go back in a normal position while cutting into [his] flesh.

Am. Compl. 2-3, ECF No. 15. When checking the restraints, Lieutenant Davis "would punch, kick, walk on [Perdue] with shield, hit [his] right arm with shield." *Id.* at 3. During one restraint check, Davis brought a bag lunch and force fed Perdue bread, peanut butter, and meat. When offering Perdue water to drink, Davis "would pour water down [his] nose and then [his] mouth causing [him] to gag and choke." *Id.* While Perdue was restrained in handcuffs and shackles, "CMC Fisher" punched

---

[1] After reviewing Perdue's initial Complaint, the court notified him that his allegations failed to state a claim against any defendant and granted him an opportunity to file an Amended Complaint to replace his initial submissions as the full statement of his claims. He filed an Amended Complaint that is now the operative pleading in this case.

[2] Perdue alleges that the events at issue (excessive force while in restraints) occurred on May 2, 2019. Amend. Compl. 2–3, ECF No. 15. But USP Lee records show that Perdue was not in restraints during that day. Mem. Supp. Mot. Dismiss Ex. 1, Canfield Decl. ¶ 10, ECF No. 27-1. Records indicate instead that Perdue was held in restraints on August 1, 2, and 3, 2019. *Id.* Perdue has not offered any evidence to contradict the defendants' records. In any event, the date of the event is not material to the exhaustion defense in this case.

him "with closed fist in [his] face and continued to kick, knee [him]" in the face and head. *Id.* at 2, 3.

Perdue filed this *Bivens* case against Bowls, Davis, and Fisher, seeking monetary damages. He alleges that as a result of the defendants' actions, he suffered injuries near his left eye, cuts on both wrists and both ankles, a torn rotator "cup," and a strained bicep. *Id.*

The defendants have filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. They argue, among other things, that Perdue's claims should be dismissed because he failed to exhaust administrative remedies before filing this case.[3]

II. DISCUSSION.

A. Standard of Review.

The Federal Rules of Civil Procedure provide that "[i]f, on a motion [to dismiss] under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). In addressing the defendants' exhaustion defense, I must rely on evidence they submit outside the pleadings,

---

[3] On February 22, 2023, the defendants filed a Supplemental Motion to Dismiss, ECF No. 33, arguing that Perdue's allegations do not state claims actionable under *Bivens*. But I have determined that Perdue's claims are appropriately dismissed because he failed to exhaust administrative remedies. Thus, I will dismiss the defendants' supplemental motion as moot.

namely, the declarations of Destiny Spearen, a paralegal for the Federal Bureau of Prisons (BOP), and the three prison counselors assigned to Perdue at USP Lee between April 26, 2019, and October 13, 2020.[4] Mem. Supp. Mot. Dismiss Exs. 2-5, ECF No. 27-2, -3, -4, -5. Accordingly, I will address the defendants' motion as one for summary judgment under Rule 56, rather than as a motion under Rule 12(b)(6).

The court provided Notice to Perdue of the defendants' motion, ECF No. 28, and advised him that he could respond to the defendants' evidence by filing counter-affidavits or other additional evidence. *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). The Notice also advised Perdue that failure to file some timely response to the motion would result in dismissal of the action for failure to prosecute. Perdue elected to respond with a one-sentence Notice, stating: "I will still like to pursue this case in this court." Notice, ECF 30.

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence

---

[4] Defendants' evidence shows that on October 13, 2020, BOP officials transferred Perdue away from USP Lee. At the time, Perdue filed this action, he was confined at USP Thompson in Illinois.

is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. The plaintiff is entitled to have the credibility of all his evidence presumed. The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. A mere scintilla of evidence supporting the case is insufficient.

*Shaw ex rel. Bowen v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).[5]

A pro se litigant's verified complaint or other verified submission must be considered as an affidavit and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on the litigant's personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). "[U]nsupported speculation is not sufficient to defeat a summary judgment motion," however. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992).

### B. Failure to Exhaust Administrative Remedies.

The Prison Litigation Reform Act, among other things, provides in 42 U.S.C. § 1997e(a) that a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. This exhaustion requirement is "mandatory," *Ross v. Blake*, 578 U.S. 632, 638 (2016), and "applies

---

[5] I have omitted internal quotation marks, alterations, and citations here and throughout this Opinion, unless otherwise noted.

to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines within that procedure before filing his civil action. *Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006).

The BOP has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Generally, an inmate must first attempt to resolve his complaint informally. At USP Lee, an inmate can obtain an informal remedy form, known as a "BP-8," from his counselor. Mem. Supp. Mot. Dismiss Ex. 2, Garcia Decl. ¶ 2, ECF No. 27-2. The inmate can then return the completed BP-8 form to his counselor, who is tasked with ensuring that such filings are routed properly. "Unit Team staff at USP Lee keep a log of when inmates are provided BP-8 forms, when the forms are returned, and whether the inmate subsequently requests and is provided a BP-9 form" as needed to pursue the next procedural step — the formal institutional remedy. *Id.* ¶ 5. The inmate must complete both the BP-8 procedure and file a BP-9 within twenty days after the incident of which he complains, although officials may grant extensions of the BP-9 filing period if the inmate shows a valid reason for the delay.

The BOP procedure provides for two levels of appeal to reviewing officials outside the prison facility where the inmate is confined. When the warden's response to the inmate's BP-9 is unfavorable, the inmate may appeal within twenty days to the Regional Director using a BP-10 form. If the Regional Director's response is unfavorable, the inmate may appeal within thirty days to the General Counsel using a BP-11 form. The inmate must complete all of the described steps to accomplish full exhaustion of BOP administrative remedies.

Under exceptional circumstances, when the issue is sensitive or the inmate's safety or well-being would be placed in danger if his remedy request became known at the institution where he is confined, the inmate may bypass submitting his BP-9 to institutional staff. Rather, when a BP-9 form addresses this sort of sensitive issue, the inmate may submit it by mail directly to the appropriate Regional Director. "The inmate shall clearly mark 'Sensitive' upon the Request and explain, in writing, the reason for not submitting the Request at the institution." 28 C.F.R. § 542.14(d)(1).

The defendants bear the burden of proving the affirmative defense that Perdue failed to exhaust available administrative remedies regarding his claims before filing suit. *Jones v. Bock*, 549 U.S. 199, 216 (2007). They have done so. Their evidence is that according to USP Lee Unit Team records between April 26, 2019, and October 13, 2020, Perdue did not request BP-8 or BP-9 forms and never filed a completed form. BOP Paralegal Spearen further states that Perdue "has not filed a

single administrative remedy while incarcerated with the BOP, including while housed at USP Lee." Spearen Decl. ¶ 13, ECF No. 27-3. Records show that during the same time period, many other USP Lee inmates pursued institutional remedy (BP-9) requests and appeals (using BP-10 and BP-11 forms). Perdue does not dispute the defendants' evidence. In fact, on the first page of his verified Amended Complaint form, he states that he has not filed any administrative remedies concerning the events underlying his *Bivens* claims.

Perdue may yet escape summary judgment under § 1997e(a) if he states facts showing that the remedies under the established grievance procedure were not "available" to him. *Ross*, 578 U.S. at 643 (noting that circumstances making prison grievance procedures unavailable "will not often arise"); *Lebron v. Anders*, No. 7:20-cv-524, 2021 WL 4227770, at *4 (W.D. Va. Sept. 16, 2021) (holding plaintiff bears burden of proving administrative remedies were unavailable). Generally, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

On the verified Amended Complaint form, in answer to the question why he did not file any grievances to prison officials about his claims, Perdue states: "Denied Administrative Remedies." Am. Compl. 1, ECF No. 15. To the contrary, each of Perdue's USP Lee counselors states that records do not show he ever

requested BP-8 or BP-9 forms from them. And in response to their evidence, Perdue does not provide any verified affidavit or declaration stating if or when he requested remedy forms or any particular detail concerning how he was denied remedy procedures. He also does not refute the evidence that he has never filed an administrative remedy, despite the option to submit a sensitive remedy to a regional administrator to avoid submitting his request to USP Lee staff for any reason.

In response to the defendants' detailed evidence that forms were available, Perdue must show that his failure to exhaust occurred through no fault of his own. *Moore*, 517 F.3d at 725. He "may not rest upon mere allegations or denials," but rather, "must demonstrate that a triable issue of fact exists" on which he could persuade a fact finder that remedies were not available. *Shaw*, 13 F.3d at 798. Perdue has failed to do so.[6] Therefore, I conclude that the defendants are entitled to

---

[6] In an "Addendum" to the initial Complaint, Perdue stated that administrative remedies were unavailable at USP Thompson and USP Lee, that staff threatened to or did throw away remedy forms, that he was afraid to file remedy forms after the use of force incident at USP Lee, and that when his family called the prison on his behalf, officers threatened to harm his family if he would not tell them to "back off." Compl. 3, ECF No. 1. This submission cannot overcome the defendants' summary judgment evidence that remedies were available. First, Perdue did not make the Addendum part of the Amended Complaint that is now the operative pleading in this case. Second, neither the initial Complaint nor the Addendum was signed under penalty of perjury, so they do not qualify as verified, affidavit evidence for summary judgment purposes. *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021).

In any event, Perdue's allegations in the Addendum are not sufficient to show unavailability. To demonstrate that officials' threats or actions made remedies unavailable, facts must show: (1) subjectively, that "the threat did actually deter the plaintiff inmate from lodging a grievance or pursing a particular part of the process;" and (2) objectively,

summary judgment as a matter of law on their defense that Perdue failed to exhaust available administrative remedies as required under 42 U.S.C. § 1997e(a). The record indicates that the time is long past for Perdue to pursue administrative remedies about the events alleged in the Amended Complaint. Thus, I will dismiss his *Bivens* claims with prejudice.

### III. CONCLUSION.

For the reasons stated in this Opinion, it is **ORDERED** as follows:

1. The defendants' motion, ECF No. 26, is GRANTED under Rule 56 and 42 U.S.C. § 1997e(a), and the plaintiff's claims are DISMISSED WITH PREJUDICE for failure to exhaust available administrative remedies.

2. The defendants' Supplemental Motion, ECF No. 33, is DISMISSED as moot.

---

that "the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." *Lebron*, 2021 WL 4227770, at *5. Objectively, mere threats to throw forms away are not likely to deter a reasonable inmate from filing or pursuing complaints about staff actions. Moreover, Perdue does not explain any connection between the administrative remedy procedures and the alleged threat to his family. Most importantly, Perdue does not show why he could not and did not avail himself of the BOP's sensitive remedy procedure to bypass returning forms to prison staff altogether. Thus, he has not shown that that this remedy failsafe was unavailable to him while at USP Lee despite the alleged treats from institutional staff.

A separate Judgment will issue herewith.

                                              ENTER:   March 8, 2023

                                              /s/  JAMES P. JONES
                                              Senior United States District Judge